**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**

| | |
|---|---|
| **IN RE** | |
| **MOUNTAINSIDE COAL COMPANY, INC., ET AL.** | **CASE NOS. 24-60341, 24-60342** |
| | **JOINTLY ADMINISTERED** |
| **DEBTORS IN POSSESSION** | |

**MEMORANDUM OPINION AND ORDER CONVERTING JOINTLY ADMINISTERED CASES TO CHAPTER 7**

Mountainside Coal Company, Inc. seeks permission to borrow $217,000 in general unsecured post-petition financing to pay expenses in June and July. [ECF Nos. 185, 215.] The Mountainside Coal case is jointly administered with the chapter 11 proceeding for Triple 7 Commodities, Inc. [ECF No. 244.] An interim hearing was held on June 17, 2024, and a final hearing was scheduled for July 1, 2024. [ECF No. 203.] The United States Trustee, the Kentucky Energy and Environmental Cabinet, Secured Creditors BRCPF M&M Mountainside Coal BLKR LLC and Binderless Coal Briquetting Company PTY Limited, and Lessors Charlisa G. Stewart and Thomas R. Gambrel object to the requested financing and cast extreme doubt on the jointly administered Debtors' ability to reorganize. [ECF Nos. 223, 225, 228, 229.]

Interested parties presented their arguments at the July 1 hearing. Based on the record and arguments, and the consent of the objecting parties, Mountainside Coal was allowed to borrow and spend $27,000 to avoid immediate and irreparable harm. [ECF No. 257.] Final relief was not possible, and an evidentiary hearing was scheduled for July 10, 2024, because there "are several problems with the proposed budget that require additional explanation and evidence." [ECF No. 246 (the "Final Hearing Order").]

1

The Final Hearing Order recognized the Debtors' cases have limped along for 4 months, and the proposed financing is not enough to support Mountainside Coal through a plan process. The Debtors were warned that they cannot pursue "a speculative reorganization process funded by creditors or prevent parties from pursuing other opportunities" and they "must prove the additional post-petition debt is warranted, and a reasonable likelihood of rehabilitation exists" to avoid conversion or dismissal pursuant to 11 U.S.C. § 1112(b)(4)(A), (B), (C) (F). [*Id.*]

An evidentiary hearing was held on July 10 and 11, 2024. Damien Caldwell testified in support of the proposed financing and plan for rehabilitation. The Debtors' Exhibits 1, 3, 5, 7, 11, 12, 13, 16, 17, 19 and 21 were moved into evidence. [*See* ECF Nos. 261-1, 261-3, 261-5, 261-7, 261-11, 261-12, 261-13, 261-16, 261-17, 261-19, and 261-21.] BRCPF also introduced two exhibits during cross-examination. [ECF No. 266-1, 266-2.] Counsel for the Debtors moved to admit new evidence during closing arguments the next day, but that request was denied because the time for presenting evidence had closed.

The Debtors' evidence did not resolve the concerns raised in the Final Hearing Order and confirmed there is no reasonable likelihood of rehabilitation. The request for financing is denied and the Debtors' jointly administered cases are converted to chapter 7.

I. **The Proposed Budget and Exit Strategy Raised Significant Concerns about the Debtors' Administrative Insolvency and Ability to Timely Reorganize.**

The discussion at the July 1 hearing and the Final Hearing Order identified problems the Debtors had to address to support the request for financing and avoid conversion or dismissal. The following concerns were also summarized before presentation of evidence on July 10:

1. The Budget projects $74,937 expenses for June and $256,035 expenses for July for total expenses of $330,972.[1]  [ECF Nos. 215, 261-16, Ex. 16.] Assuming the financing is approved, Mountainside Coal must fund an additional $113,972 from other sources to avoid substantial administrative expense claims causing a continuing loss and diminution of the estate. 11 U.S.C.§ 1112(b)(4)(A).

    a. The first source identified by Mountainside Coal is $160,000 from RAP Consulting. Mountainside Coal provided no information regarding the counterparty or the terms of the agreement.

    b. The other source of projected funds was $56,000 from settlement of Adversary Proceeding No. 24-6029 against defendant Ferroglobe USA Mining, LLC, and a related state court proceeding. Creditor BRCPF M&M Mountainside Coal BLKR LLC is a party to the settlement and its counsel said there is no settlement and no guarantee that a settlement will occur.

    c. Mountainside Coal plans to restart operations to produce revenue before a plan is complete, but the budget does not include expenses necessary to make this a reality.

2. The Debtors' counsel disclosed plans to propose a reorganization plan by the end of September. But many factors suggested Mountainside Coal will not have the ability to file the disclosure statement or plan within this time frame or otherwise. 11 U.S.C. §§ 1112(b)(4)(A)-(C), (J).

    a. There is no evidence Mountainside Coal will have funds to survive the additional two months. The case was almost dismissed earlier for lack of insurance, and Mountainside Coal is on notice that lack of insurance will result in immediate dismissal or conversion.

    b. The Debtors' counsel indicated there are differences with Debtors' management that could require withdrawal and appointment of new counsel. This raises concerns with the plan timeline and increased costs to educate new counsel.

---

[1] The budget includes the final $15,000 from the original financing as a source of funds. [ECF No. 216-17-18, Exs. 16 and 17; *see also* ECF Nos. 194, 203, 214 (approval of the initial DIP financing).] But Mountainside Coal indicated it would spend these funds before the July 1 hearing, so they are not available for future expenses. [ECF Nos. 178, 189, 203.] If the funds are available, the gap is still approximately $100,000.

    c. Budgeted expenses to restart operations as proposed by Mountainside Coal are inadequate and necessary costs are omitted from the budget.

        i. Mountainside Coal proposes restarting the coal wash plant, but the expenses listed are not explained and obvious expenses are missing.

        ii. Payments for fees due to Kentucky Reclamation Guaranty Fund ("KRGF") are budgeted at $68,000, but at least $75,000 is due by the end of July.

        iii. Mountainside Coal owes the Commonwealth of Kentucky over $480,000 for unabated violations and civil penalties.

The Final Hearing Order also notified Triple 7 Commodities that it is subject to conversion or dismissal because:

> There is no indication that Triple 7 Commodities has any funds or a separate plan for reorganization, as all activity has focused on Mountainside Coal. The testimony suggested mining might restart at one mine, but there was otherwise no information on Triple 7 Commodities' plans. Further, Triple 7 Commodities has not filed any monthly operating reports.

[ECF No. 246.]

## II. The Debtors' Proof is Insufficient to Address the Concerns Raised in the Final Hearing Order and the July Hearings.

The evidence is not sufficient to prove the Debtors have the necessary funds to resume operations and prevent the Debtors' administrative insolvency by the end of July. The evidence also confirms the Debtors do not have a reasonable likelihood of rehabilitation and conversion is appropriate.

### A. Mountainside Coal Is Administratively Insolvent and Cannot Timely Reorganize.

Caldwell provided a narrative that explained the overall goal is to restart operations and generate revenue to fund ongoing expenses. [ECF No. 261-16, Ex. 16.] Caldwell testified that he plans to piece the Debtors' operations back together, but the Debtors have a catch-22 problem. Caldwell believes an investor or additional financing is required to prove the Debtors

4

can succeed. But he cannot find either until he has a verifiable product and a verifiable buyer. And the counterparties are unwilling to commit until the Debtors show they can perform.

The Debtors face a classic "which comes first" situation and have not presented a viable plan to show they can overcome their issues.

### 1. The Proposed Funding is Not Enough to Avoid Administrative Insolvency by the End of July.

The proposed financing is not enough to pay Mountainside Coal's expenses or resume operations before Mountainside Coal is administratively insolvent. The budget for Mountainside Coal continues to show the company needs over $113,000 to avoid administrative insolvency at the end of July, but there is no proof that Mountainside Coal can timely secure those funds. [ECF No. 261-17, Ex. 17.]

Caldwell testified that he expects an additional $56,000 in July from a settlement resolving prepetition state court litigation and the adversary proceeding filed against Ferroglobe USA Mining, LLC. Counsel for BRCPF appeared at the hearing and explained that his client was involved in negotiations during June that could have provided this amount. A deal was not reached, however, because BRCPF does not trust the projected budget and related narrative. Caldwell admits there is no deal and he has not had, and he does not know of, any additional settlement discussions.

Caldwell also testified that Mountainside Coal will receive a $160,000 prepayment royalty from a coal brokerage agreement with RAP Consulting. The only tangible proof presented were text messages that indicated he was involved in negotiations for the deal. [ECF No. 261-7, Ex. 7.] Caldwell admitted he has not had significant discussions with RAP Consulting since the May 1 text messages. Caldwell also acknowledged RAP Consulting is one

5

of the counterparties that will not go forward with a deal until Mountainside Coal can restart the coal wash plant and show continuing operations.

Caldwell admitted delays indicate the earliest the coal wash plant can restart is the end of August.  Caldwell explained other potential sources of funds, including restarting operations on certain mines or selling mines to other interested parties.  But the evidence and testimony disclosed the same circular problems that prevented a deal with RAP Consulting.  The Debtors produced no evidence to allow a conclusion they are even close to deals that would generate funds before the money runs out at the end of the month.

**2. Mountainside Coal Does Not Have a Viable Plan to Satisfy the Fines and Penalties Due to the Cabinet.**

Caldwell admitted the Debtors face significant regulatory hurdles before they can restart mining operations.  Mountainside Coal owes the Commonwealth of Kentucky $482,790.00 for outstanding violations on the various permits and approximately $75,000 for the KRGF.  Two of the mines Mountainside Coal proposes to operate in its budget are subject to cessation orders because of these unpaid obligations.  Caldwell admitted Mountainside Coal cannot operate the proposed mines without satisfying these obligations, and offered no realistic plan to address them.

Mountainside Coal's budget contemplates payment of $68,000 to the KRGF and Caldwell said he would dedicate $20,000 to the much larger obligation.  Caldwell admits this amount does not come close to resolving all the penalties and fines owed to the Cabinet.  His hope is the Cabinet will see it as an act of good faith to start negotiations.  But Caldwell honestly admitted that Mountainside Coal and he have lost any credibility with the Cabinet.

Further, the Cabinet's ability to negotiate the amount due is limited by statute and regulation.  [*See* ECF Nos. 221, 229 (the Cabinet's filings).]   The testimony suggested proposed

6

management changes that would limit Caldwell's involvement is a step towards rehabilitating the Debtors' credibility with federal and state regulatory authorities. [*See* ECF No. 261-5, Ex. 5.] The management changes might eventually have that effect, but that is not an immediate solution and only solves a part of the problem. The testimony and record still do not suggest Mountainside Coal can pay the amounts due to the Cabinet by August, much less over time through a plan process.

### 3. Mountainside Coal Cannot Mine Coal Because It Has Lost or Will Lose Access to the Permitted Property.

Mountainside Coal wants to restart the coal wash plant (now by the end of August) and has moved to assume the related lease. [ECF No. 240.] The budget does not, however, include the rent payments or provide for payment of the $66,000 owed to cure arrearages. Similarly, Mountainside Coal has moved to assume the lease for Eaton Fork to recover the collateral bond,[2] but there are no funds in the proposed budget to pay past due rent. [ECF No. 238.]

Mountainside Coal has also targeted Flag Ridge for mining, but it has no right to go on the permitted property because its lease with Penn Virginia terminated in 2023. Caldwell testified and introduced a draft lease document dated November 2023. [ECF No. 261-3, Ex. 3.] But he offered no proof of current substantive negotiations because this is one of the counterparties that requires proof of an ability to operate and pay rent obligations before signing any contract.

---

[2] Receipt of any collateral is not imminent. The Cabinet previously told all parties it would not release any bonds while past due amounts remain outstanding. Even if the Cabinet relents, the release process usually takes months and occurs in increments.

      **B.**     **Triple 7 Commodities is Administratively Insolvent with No Plan to Reorganize.**

There is no proof Triple 7 Commodities has funds to operate or any hope of reorganization independent of Mountainside Coal's proposal. Triple 7 Commodities is a minority owner of two mines in West Virginia that it has not operated for an extended amount of time. The proposed budget allocates a minor amount of funds to the Totten Ridge mine even though the underlying loan agreement only contemplates lending funds for use by Mountainside Coal.

Caldwell admitted Triple 7 Commodities cannot operate on any West Virginia permit until it pays the tens of thousands of dollars due to West Virginia for the accruing fines and penalties. Caldwell again honestly admitted that Triple 7 Commodities and he have no credibility with state permitting authorities. These problems are mostly irrelevant because Caldwell also admitted Triple 7 Commodities does not currently have the necessary mineral rights and surface leases, or a load out, wash plant, or equipment, necessary to facilitate mining in West Virginia.

The record confirms Triple 7 Commodities has no bank account and Caldwell said the only other employee is an unpaid individual whose duties were not explained.[3] Triple 7 Commodities has not filed monthly operating reports and the record does not show any activity that might suggest an intent to progress the case (*i.e.*, first day motions, financing or cash collateral requests, lease assumption or rejection offers). *See also* 11 U.S.C. § 1112(b)(4)(F) (failure to file required papers is cause for conversion or dismissal).

---

[3] Testimony indicated the individual is related to the majority mine owner that is involved in disputes with the Debtor.

The record and testimony confirm Triple 7 Commodities has and will continue to incur substantial losses and diminution of its estate. Triple 7 Commodities' only hope of reorganization rests on the success of Mountainside Coal. Mountainside Coal is administratively insolvent, and it is not likely that it can timely reorganize. Triple 7 Commodities does not have a reasonable likelihood of rehabilitation.

### III. Conversion to Chapter 7 is Appropriate.

Cause to dismiss or convert a bankruptcy case exists if there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 1112(b)(4)(A); *In re Creekside Senior Apartments, L.P.*, 489 B.R. 51, 61 (B.A.P. 6th Cir. 2013). There is a substantial or continuing loss to or diminution of estate assets if "the debtor continues to incur losses or maintains a negative cash flow position after the entry of the order for relief or that the debtor's assets have declined in value since the case was commenced." *Creekside Senior Apartments*, 489 B.R. at 61 (citing *In re Westgate Props., Ltd.*, 432 B.R. 720, 723 (Bankr. N.D. Ohio 2010)). There is no reasonable likelihood of rehabilitation unless a debtor can prove "it will break the cycle of losses and place the business "back on solid financial footing within a reasonable amount of time[.]" *Id*. (citing *In re Costa Bonita Beach Resort, Inc*., 479 B.R. 14, 42 (Bankr. D.P.R 2012)).

The evidence confirms the Debtors do not have a viable plan for timely rehabilitation or that they can pay debts as they accrue. 11 U.S.C. § 1112(b)(4)(A); *see also* 11 U.S.C. § 1112(b)(4)(B) (gross mismanagement), (C) (lack of insurance), (F) (unexcused failure to timely file documents); (J) (inability to timely file a disclosure statement and plan). Approving financing with administrative expense priority would only add to the insolvency. 11 U.S.C.

§ 364(b). Caldwell has ideas, but there is no substance to his proposals that could provide comfort the Debtors can succeed in chapter 11.

The testimony also revealed a previously unknown problem. Caldwell admitted that Mountainside Coal has not filed tax returns since 2021. There is no way to determine if taxes are due, or penalties and interest are accruing, without this information. This also causes serious concern regarding the operations of the Debtors both prior to and after the filing.

The Debtors suggested they could submit a new budget to pay approximately $110,000 over the next six weeks. But the objecting creditors accurately pointed out that the Debtors' catch-22 scenario would not improve and they would be back in the same position at the end of the six week period. Instead, the United States Trustee and objecting creditors unanimously requested conversion over dismissal. Their arguments and the record suggest there are potential additional recoveries for unsecured creditors through Chapter 5 causes of action that at least require investigation by a chapter 7 trustee.

Therefore, conversion is the best option to maximize and liquidate the Debtors' estates for the benefit of their creditors.

IV. **Conclusion.**

Based on the foregoing, it is ORDERED:

(1) The Motion for Authorization to Obtain Post-Petition Unsecured Credit on Limited Service [ECF No. 185] is DENIED. This does not affect the interim relief.

(2) The jointly administered cases of the Debtors Mountainside Coal Company, Inc., Case No. 24-60342, and Triple 7 Commodities, Inc., Case No. 24-60341, are CONVERTED to cases under chapter 7.

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Friday, July 12, 2024**
(grs)